1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **EASTERN DISTRICT OF CALIFORNIA**

7

8 MARIA M. RAMIREZ,                                    CASE NO. 1:13-CV-513 GSA

9              Plaintiff,

10       v.                                            ORDER REGARDING PLAINTIFF'S
                                                       SOCIAL SECURITY COMPLAINT
11 CAROLYN W. COLVIN, Acting
   Commissioner of Social Security,
12
              Defendant.
13

14

15

16 **INTRODUCTION**

17       Plaintiff Maria M. Ramirez ("Plaintiff") seeks judicial review of a final decision of the

18 Commissioner of Social Security ("Commissioner") denying her application for Supplemental

19 Security Income payments under Title XVI of the Social Security Act. The matter is pending before

20 the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable

21 Gary S. Austin, United States Magistrate Judge.[1]

22 **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

23       On November 20, 2008, Plaintiff filed an application for supplemental security income

24 benefits under Title XVI of the Social Security Act, alleging disability beginning October 16, 2008.

25 AR 148-155. The Disability Determination Services Division, California Department of Health and

26 Human Services ("DDS"), denied her application initially on May 5, 2009, and upon

27 reconsideration on June 7, 2010. AR 88-91; 93-97. Subsequently, on September 13, 2011, a Social

28

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 7 & 9.

1  Security Administration administrative law judge ("ALJ") conducted a hearing on Plaintiff's claim.

2  AR 40-65. Plaintiff appeared with counsel and testified at the hearing. AR 40-65. A vocational

3  expert also testified. AR 40-65. In a decision dated October 7, 2011, the ALJ found that Plaintiff

4  was not disabled.  AR 22-39.  On March 8, 2013, the Appeals Council denied Plaintiff's request for

5  review, making the ALJ's decision the Commissioner's final decision.  AR 1-11.  Plaintiff then

6  commenced this action in District Court pursuant to 42 U.S.C. §§ 405(g), 1383(c).

7      In evaluating a claimant's disability the ALJ is required to undertake a sequential five-step

8  analysis to determine: (1) whether a claimant engaged in substantial gainful activity during the

9  period of alleged disability; (2) whether the claimant had medically-determinable "severe"

10  impairments; (3) whether these impairments meet or are medically equivalent to one of the listed

11  impairments set forth in 20 CFR § 404, Subpart P, Appendix 1; (4) whether the claimant retained

12  the residual functional capacity ("RFC") to perform his past relevant work;[2] and (5) whether the

13  claimant had the ability to perform other jobs existing in significant numbers at the regional and

14  national level.  20 CFR § 404.1520(a)-(f).

15      In her written decision regarding Plaintiff's application for social security benefits, the ALJ

16  first found that Plaintiff had not engaged in substantial gainful activity since the application date.

17  AR 27. Next, she found that Plaintiff had the following severe impairments: lumbar degenerative

18  disc disease, right shoulder degenerative joint disease with tendinopathy, left knee degenerative

19  joint disease, and obesity. AR 27; s*ee* 20 CFR 416.920(c). Plaintiff also alleged that she had

20  anxiety, hypertension, hyperlipidemia, and carpal tunnel syndrome. AR 27. The ALJ determined

21  that these were not severe impairments. AR 27; *see* 20 CFR §§ 416.920(c), 404.1521, and 416.921.

22  At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled

23  the severity of one of the listed impairments in 20 CFR § 404, Subpart P, Appendix 1. AR 29. The

24  ALJ then assessed Plaintiff's residual functional capacity.[3] AR 29. At step four, the ALJ found that

[2] Residual functional capacity captures what a claimant "can still do despite [his] limitations."  20 CFR § 404.1545. "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).
[3] The ALJ found that Plaintiff had the residual functional capacity to lift and/or carry ten pounds occasionally and less than ten pounds frequently; to stand and/or walk two hours and sit six hours in an eight-hour day; to occasionally stoop, crouch, crawl, climb, kneel and reach overhead with her right extremity. AR 29. He determined that she was unable to

1    Plaintiff had no past relevant work. AR 34. At step five, the ALJ found that, considering her

2    residual functional capacity, along with her age, education, and work experience, there were jobs

3    that existed in significant numbers in the national economy that Plaintiff could perform. AR 34.

4                                **STANDARD OF REVIEW**

5            Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

6    whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See*

7    *Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071,

8    1074 (9th Cir. 2007). "Substantial evidence means more than a scintilla but less than a

9    preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence

10   which, considering the record as a whole, a reasonable person might accept as adequate to support a

11   conclusion."  *Id*.  Where the evidence is susceptible to more than one rational interpretation, one of

12   which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

13                                   **DISCUSSION**

14   I.      <u>The Diagnosis of Chronic Pain made by Consultative Examiner, Dr. Michael Froehler</u>

15        *A.  Issue Presented for Review*

16           Plaintiff's appeal is primarily based on the ALJ's finding that Plaintiff's carpal tunnel

17   syndrome was not a severe impairment. Doc. 14 at 9:2-9. Plaintiff argues that the ALJ did not

18   properly evaluate the evidence related to Plaintiff's carpal tunnel syndrome as required by 20 CFR

19   § 416.920(a)(3). Doc. 14 at 9:8-9. Specifically, the ALJ failed to consider a diagnosis of chronic

20   pain made by the consultative examiner, Dr. Michael Froehler, that Plaintiff alleges stems from

21   carpal tunnel syndrome. Doc. 14 at 10:1-3; AR 304. Plaintiff further argues that the ALJ also erred

22   by failing to consider Dr. Froehler's diagnosis of chronic pain in assessing Plaintiff's residual

23   functional capacity.  Doc. 14 at 10:16-17; AR 304.

24           Defendant argues that the ALJ's finding that Plaintiff's carpal tunnel syndrome was not a

25   severe impairment was irrelevant to the ultimate disability determination because the ALJ found

26   that other impairments were severe, and, considering all functional limitations established by the

27

28   climb ladders, ropes and scaffolds. AR 29. The ALJ limited Plaintiff to a narrow range of sedentary work on account of
     her obesity, right shoulder, back and knee pain. AR 30.

1    evidence, still did not find Plaintiff disabled. Doc. 17 at 24:22-26:3.

2        *B.   Legal Standards*

3        At step two of the five-step sequential disability inquiry, the Commissioner determines

4    "whether medical evidence establishes an impairment or combination of impairments of such

5    severity as to be the basis of a finding of inability to engage in any [substantial gainful activity]."

6    SSR 85-28, SSR LEXIS 19 (internal quotation marks omitted); *see also* 20 CFR §§ 404.1520(c),

7    416.920(c). At this step, a claimant must make a threshold showing that: (1) she has a medically

8    determinable impairment or combination of impairments;[4] and (2) the impairment or combination

9    of impairments is severe.[5] *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987); *see also* 20 C.F.R. §§

10   404.1520(c), 416.920(c). "Thus, the burden of proof is on the claimant to establish a medically

11   determinable severe impairment that significantly limits her physical or mental ability to do basic

12   work activities, or the 'abilities and aptitudes necessary to do most jobs.'" *Jefferson v. Colvin*, 2014

13   U.S. Dist. LEXIS 121645, *20 (E.D. Cal. Aug. 29, 2014)(*citing* 20 C.F.R. §§ 404.1521(a);

14   416.921(a)).

15       Between steps three and four, the ALJ must assess the claimant's residual functional

16   capacity. 20 CFR § 416.920(e); *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001). A

17   claimant's residual functional capacity is "the most [the claimant] can still do despite [his or her]

18   limitations" and is assessed "based on all the relevant evidence." 20 CFR §§ 404.1545(a)(1),

19   416.945(a)(1). The ALJ's residual functional capacity analysis must consider all of the claimant's

20   "medically determinable impairments," including those that are not severe. 20 CFR §§ 416.920(e),

21   416.945(a)(2); SSR 96-8p, 1996 SSR LEXIS 5. The ALJ must consider symptoms, including pain,

22   that are reasonably attributable to a medically determinable impairment. *Robbins v. Soc. Sec.*

23   *Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

24   ///

---

[4]  An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 CFR § 416.908.

[5]  An impairment is "severe" if significantly limits a claimant's ability to do basic work activities. 20 CFR § 416.920(c); *Thune v. Astrue*, 499 Fed. Appx. 701, 703 (9th Cir. 2012)(an impairment can be found "not severe" only if the evidence establishes a slight abnormality  that has no more than a minimal effect on an individual's ability to work.)

*C. Relevant Medical Findings*

On April 10, 2010, Dr. Michael Froehler, MD, conducted a consultative neurological examination of Plaintiff at the request of DDS and prepared a report documenting his findings. AR 302-304. Dr. Froehler noted that Plaintiff had multiple complaints of chronic pain affecting most parts of her body but she was referred to him for a neurologic examination. Accordingly, he focused on Plaintiff's complaints of carpal tunnel syndrome and low back pain. AR 302. He noted that Plaintiff reported daily pain and swelling in her hands and fingers which was ongoing for about sixteen years. AR 302. Regarding Plaintiff's evaluation and treatment for carpal tunnel syndrome, Dr. Froehler's report states as follows:

> Apparently she was told in the past that she had carpal tunnel syndrome although she has not had any specific evaluation in terms of nerve conduction studies or an EMG. I do not think that she has seen a neurologist in the past either. She has had no specific treatment for this.

AR 302. In examining Plaintiff, Dr. Froehler found that "[t]here is significant giveaway weakness throughout the entire examination," although "no specific weakness of any muscles of the hands could reliably be identified." AR 303. He also found that "[t]here is no sensory loss in the upper extremities bilaterally. Specifically, the median and ulnar nerve distributions were examined in detail and were normal." AR 304.

Dr. Froehler also considered Plaintiff's complaints of low back pain with chronic muscular pain and spasm in the lower back for many years. AR 302. Dr. Froehler noted, "With specific regard to neurologic symptoms, she does say that she has had intermittent numbness in the left leg. She has not had any specific treatment for this either." AR 302. After conducting a neurologic examination with reference to Plaintiff's complaints of symptoms of carpal tunnel syndrome and low back pain, Dr. Froehler concluded that he was "unable to identify any neurologic condition" for Plaintiff's pain. AR 304. Dr. Froehler diagnosed Plaintiff with chronic pain, noting that "[Plaintiff] does obviously have chronic pain and there may be some other non-neurologic issues to account for this." AR 304. However, Dr. Froehler did not clarify whether Plaintiff's chronic pain was in her hands, lower back, or another part of her body. AR 304.

///

D. *The ALJ's Discussion of Dr. Froehler's Findings in Determining the Severity of Plaintiff's Alleged Carpal Tunnel Syndrome and Plaintiff's Residual Functional Capacity*

In finding that Plaintiff's carpal tunnel syndrome was not severe, the ALJ thoroughly discussed the consultative neurological examination conducted by Dr. Froehler. AR 27. The ALJ considered Plaintiff's overall treating history and found that Dr. Froehler was the only physician, treating or otherwise, to evaluate Plaintiff's alleged carpal tunnel syndrome.[6] AR 28. She noted Dr. Froehler's findings that there was no significant weakness in any hand muscle, no sensory loss in her upper extremities bilaterally, and no abnormalities in the median and ulnar nerve. AR 27, 304. The ALJ observed that the medical record did not reflect any treatment or examination by a neurologist other than the consultative examiner, Dr. Froehler. AR 27. Plaintiff was not prescribed anti-inflammatory medications or a wrist splint to relieve symptoms of carpal tunnel pain, and there was no recommendation by treating physicians for any surgical procedure or corticosteroid injections. AR 28. The ALJ stated: "I have given consideration to the claimant's overall treating history, and I find Dr. Froehler is the only examining physician non-treating or otherwise to assess the claimant's carpal tunnel syndrome." AR 28. The ALJ noted that Dr. Froehler had not assessed any significant limitations for Plaintiff on account of her alleged carpal tunnel syndrome. The ALJ concluded that she gave "great weight" to his opinion. AR 28.

The ALJ discussed Dr. Froehler's report again in assessing Plaintiff's residual functional capacity. In addition to the considerations referenced above, the ALJ specifically addressed Dr. Froehler's diagnosis of chronic pain and the fact that he ruled out any neurological basis for the pain. AR 32, 304. She stated: "Although Dr. Froehler diagnosed chronic pain, he was unable to identify any neurological condition during his examination. He noted the possibility of other non-neurological issues to account for [Plaintiff's] chronic pain." AR 32, 304. The ALJ noted that Dr. Froehler's opinion supported her residual functional capacity assessment and gave it "great

---

[6] Other than Dr. Froehler's report, the medical record does not reflect examination, diagnosis, or treatment of carpal tunnel syndrome. Dr. James Nowlan, who began an internal medicine evaluation but had to discontinue due to Plaintiff's demonstration of pain, noted that Plaintiff had carpal tunnel syndrome diagnosed in 1990, but also noted that she had not had an EMG or neurological evaluation. AR 253-255. Similarly, Dr. Froehler stated that Plaintiff was told in the past that she had carpal tunnel syndrome, but had not had an EMG or nerve conduction studies. AR 302. Dr. Froehler did not think Plaintiff had seen a neurologist in a past, and he stated that she has had no specific treatment for carpal tunnel syndrome. AR 302.

weight." AR 32.

E.   *Analysis*

1.   <u>Plaintiff has not shown that Dr. Froehler's chronic pain diagnosis is related to a medically determinable impairment</u>

At step two, Plaintiff has the burden to demonstrate that she has a medically determinable impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987); *see also* 20 CFR §§ 404.1520(c), 416.920(c). Upon meeting that burden, she must also show that the impairment at issue is severe. *Id*. In demonstrating that an impairment is severe, Plaintiff may reference symptoms such as pain, supported by medical evidence. 20 CFR §§ 404.1508, 416.908. However, subjective symptoms referenced by the Plaintiff must arise from a medically determinable impairment. 20 CFR § 416.929 ("[s]ymptoms, such as pain […] will not be found to affect [a claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."); *King v. Astrue*, 2011 U.S. Dist. LEXIS 49707, *43 (N.D. Cal. May 10, 2011)(the district court found that it was proper for the ALJ to reject the claimant's subjective complaints of anemia and fatigue because the court found that Plaintiff did not provide any objective medical evidence to support them); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)(An ALJ may reject "a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain" if the claimant fails to produce "objective medical evidence of an underlying impairment.").

Here, Dr. Froehler expressly ruled out that Plaintiff had any neurological impairment (such as carpal tunnel syndrome), and noted that Plaintiff's chronic pain may be caused by unspecified non-neurological issues. AR 304. Dr. Froehler noted that, although Plaintiff reported that she had been told in the past that she had carpal tunnel syndrome, she had not previously seen a neurologist, nor had she been specifically evaluated or received any treatment for this condition. AR 302. This case is analogous to *King*, where the claimant's symptoms of anemia and fatigue, which were noted by doctors, were properly not considered by the ALJ because there was no objective medical evidence of anemia. *King v. Astrue*, 2011 U.S. Dist. LEXIS 49707 at *43.

Here, Plaintiff claims to have carpal tunnel syndrome but there is no medical evidence in the

7

record supporting her claim.  On the contrary, Dr. Froehler's finding that Plaintiff has no

neurological impairment explicitly contradicts Plaintiff's claim of carpal tunnel syndrome.  Dr.

Froehler further states that the cause of Plaintiff's chronic pain is undetermined.  Indeed Dr.

Froehler also does not confirm whether the chronic pain at issue is in Plaintiff's hands.  In light of

this evidence, Plaintiff has not met her burden at step two to demonstrate that she has a medically-

determinable impairment, i.e. carpal tunnel syndrome, that is the cause of the alleged pain in her

hands and fingers.  An ALJ may not consider subjective symptoms such as chronic pain in

assessing the severity of an impairment if no underlying medically determinable impairment is

ascertained. 20 CFR § 416.929.  Here Plaintiff's alleged carpal tunnel syndrome is not indicated by

the objective medical evidence.  Therefore, the ALJ did not err in disregarding Dr. Froehler's

diagnosis of chronic pain when evaluating the severity of Plaintiff's alleged carpal tunnel

syndrome.

Similarly, in assessing a claimant's residual functional capacity, the ALJ can only consider

subjective symptoms such as pain if Plaintiff demonstrates the existence of an underlying

medically-determinable impairment. 20 CFR § 416.929. Since Plaintiff's has not shown that her

chronic pain is caused by an underlying medical impairment, the ALJ also did not err in

disregarding the chronic pain diagnosis when assessing Plaintiff's residual functional capacity.

2.  <u>The ALJ's step two determination that Plaintiff's alleged carpal tunnel syndrome was not severe, as well as her residual functional capacity determination, are proper given that Dr. Froehler did not assess functional limitations on account of Plaintiff's alleged carpal tunnel syndrome or chronic pain diagnosis</u>

Plaintiff's argument that the ALJ erred in not considering Plaintiff's chronic pain arising

from her carpal tunnel syndrome is also misplaced because Dr. Froehler did not assess any

functional limitations on account of Plaintiff's carpal tunnel syndrome or the chronic pain that he

diagnosed.  The ALJ properly considered all of Dr. Froehler's findings in assessing the severity of

Plaintiff's carpal tunnel syndrome and in determining Plaintiff's residual functional capacity. AR

27-28, 31-32. The ALJ thoroughly discussed the consultative neurological examination performed

by Dr. Froehler. AR 27. She noted Dr. Froehler's findings that there was no significant weakness in

Plaintiff's hands, no sensory loss in her upper extremities bilaterally, and no abnormality in the median and ulnar nerve distributions. AR 27, 304. The ALJ observed that Plaintiff had not received any treatment for carpal tunnel syndrome. AR 27. Specifically, the ALJ noted that Plaintiff was not prescribed anti-inflammatory medications or a wrist splint to relieve pain, and there was no record of any recommendation by treating physicians for any surgical procedure or corticosteroid injections. AR 27-28. Finally, the ALJ noted that Dr. Froehler had not assessed any functional limitations based on Plaintiff's alleged carpal tunnel syndrome.  AR 28.

Plaintiff argues that the ALJ failed to consider Dr. Froehler's diagnosis of chronic pain associated with her alleged carpal tunnel syndrome.  However, since Dr. Froehler did not assess any functional limitations on account of Plaintiff's chronic pain or her alleged carpal tunnel syndrome, the ALJ properly did not consider Dr. Froehler's chronic pain diagnosis at step two and in her residual functional capacity analysis. *Trac v. Colvin*, 2013 U.S. Dist. LEXIS 51845, *17 (C.D. Cal. Apr. 9, 2013)("a mere diagnosis of an impairment is not enough to establish disability"); *Young v. Sullivan*, 911 F.2d 180, 183-184 (9th Cir. 1990); *and Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)("An impairment is not severe if it is merely 'a slight abnormality […] that has no more than a minimal effect on the ability to do basic work activities.'").

In sum, the ALJ's step two finding that Plaintiff's carpal tunnel syndrome was not severe, as well as her assessment of Plaintiff's residual functional capacity, are based on correct legal standards and supported by substantial evidence in the record.

II.     Plaintiff's Credibility

A.  *Issues Presented for Review*

Plaintiff also argues that the ALJ's adverse credibility determination is improper and not supported by substantial evidence. Doc. 14 at 11:15-16. Plaintiff argues that the ALJ's error is harmful because Plaintiff would have been found disabled if her testimony were credited.  Doc. 14 at 14:8-10.  Defendant argues that the ALJ properly determined that Plaintiff was not credible

because she provided clear and convincing reasons, supported by substantial evidence in the record, for her credibility determination. Doc. 17 at 16:1-4.

### B. Plaintiff's Subjective Symptom Testimony

At the hearing, Plaintiff testified that she had no social activities, and did not go to church, comb her own hair, or cook. AR 47-48. Her daughter helped her shower, comb her hair, cook, and drive as needed. AR 47-48. She did not cook or do household chores because it hurt her back to stand for long periods. AR 47. She could not bend over to pick things up or climb stairs. AR 56. Her pain was constant, and she used hot towels and Vicodin to relieve her pain symptoms. AR 49-50, 52. She used a wheelchair outside of the house and a cane or walker inside. AR 32, 51. She said her shoulders hurt and she had pain from her fingertips to her elbows. AR 32, 52-53. She could not carry a plate because her hands would become numb and red. AR 32, 53.

### C. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints of pain and other symptoms, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that the impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.*

Regarding credibility determinations by an ALJ, the Ninth Circuit has held as follows:

The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir.2009); 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p, available at 1996 SSR LEXIS 4.  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ properly discounts credibility if he makes specific credibility findings that are properly supported by the record and sufficiently specific to ensure a reviewing court that he did not "arbitrarily discredit" the testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); SSR 96-7p, available at 1996 SSR LEXIS 4 (The ALJ's findings must be sufficiently specific to make clear to the claimant and to any reviewing court the weight the ALJ gave to the individuals' statements and the reasons for that weight).

*D.  Analysis*

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 30-32. However, the ALJ further determined that Plaintiff's statements about the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with his assessment of Plaintiff's residual functional capacity. AR 32.  Absent affirmative evidence of malingering, the ALJ is required to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.  As discussed below, the Court finds that the ALJ gave clear and convincing reasons, supported by the record, to discount Plaintiff's credibility.

1

1.  <u>Inconsistency between the objective medical evidence
    and Plaintiff's subjective complaints</u>

2

The ALJ stated that she gave "little weight to the claimant's allegations of disabling

3

symptoms and her subjective complaints, because there is little objective evidence of the

4

claimant's impairment, treatment, or clinical signs and findings supporting her subjective

5

allegations of debilitating pain." AR 33. The ALJ found that the objective medical evidence in the

6

record did not support Plaintiff's subjective complaints. With regards to pain in her hands, the ALJ

7

noted that Dr. Froehler, a consultative examiner who conducted a neurological examination, noted

8

no neurological findings, no significant giveaway weakness, no sensory deficits, and normal deep

9

tendon reflexes. AR 33, 304.  Further, Plaintiff had not been evaluated or treated by a neurologist

10

for her back and arm and hand problems in the past.  AR 33, 302.

11

Although an ALJ may not rely solely on the inconsistency between objective findings and a

12

claimant's subjective claims in order to reject the latter, *Light*, 119 F.3d at 792, an ALJ may

13

properly consider such an inconsistency as one factor among others in making his credibility

14

determination.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc.*

15

*Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  Medical evidence is a useful consideration in

16

making conclusions about a claimant's symptom testimony. SSR 97-6p, (medical evidence "is a

17

useful indicator to assist us in making reasonable conclusions about the intensity and persistence

18

of" an individual's symptoms and the effects those symptoms may have on the individual's ability

19

to function) (quoting 20 CFR 416.929(c)(2)).

20

The ALJ properly considered the entirety of the medical evidence, including Dr. Froehler's

21

report, and correctly noted that the medical evidence does not support Plaintiff's description of the

22

severity of her impairments and their impact on her ability to work.  The ALJ's explanation

23

constitutes a clear and convincing reason, supported by substantial evidence in the record, for

24

rejecting Plaintiff's testimony.

25

2.  <u>Lack of  treatment</u>

26

The ALJ also noted that Plaintiff was not treated for her alleged impairments. AR 27. As to

27

her alleged carpal tunnel syndrome, she was not prescribed medication or a wrist splint, nor was she

28

referred for further treatment such as surgery or corticosteroid injections. AR 27.  As to her back

12

pain, she was not referred to a neurologist, orthopedist or pains specialist. AR 33. She was not prescribed a TENS unit, nor did she require cortisone injections in her back or acupuncture to relieve her pain. AR 33. She was also considered a non-surgical candidate, and her provider noted that he could not recommend her for disability at the time. AR 33, 252. Regarding her knee pain, although Plaintiff had undergone cortisone injections and was on pain medication, her last examination a few months prior had shown negative findings. AR 33, 342. Finally, Plaintiff had not undergone physical therapy or pain management. AR 33. Dr. Froehler also noted that Plaintiff was not treated for either her alleged carpal tunnel syndrome or lower back pain. AR 302.

The ALJ may discount a claimant's symptom testimony where the claimant describes severe and disabling symptoms but has sought or received only minimal or conservative treatment for his or her complaints. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). "[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p. The ALJ's reliance on the inconsistency between Plaintiff's complaints and her treatment record counts as a clear and convincing reason, supported by substantial evidence in the record, for rejecting Plaintiff's subjective symptom testimony.

3.   Physicians' statements about Plaintiff's symptoms

The ALJ considered a remark by Dr. Froehler that Plaintiff "clearly embellishes her symptoms of pain." AR 33. This remark casts doubt on Plaintiff's subjective pain testimony and the ALJ properly considered it. In making a credibility determination, the ALJ may consider testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including […] statements and other information provided by treating or examining physicians […] about the symptoms." SSR 96-7p. The ALJ's reliance on Dr. Froehler's conclusion that Plaintiff exaggerates her pain symptoms is a clear and convincing reason, supported by substantial evidence in the record, for rejecting Plaintiff's testimony.

The ALJ also noted another instance in which Plaintiff "may have attempted to exaggerate

1 her level of disability" to an examining physician. AR 32. Dr. James Nowlan, who attempted to

2 conduct a consultative internal medicine examination of Plaintiff, noted extreme pain behavior

3 during her consultative examination.  AR 254.  Dr. Nowlan had to discontinue the consultative

4 examination because Plaintiff started screaming with pain during the examination.  AR 254.  Dr.

5 Nowlan noted that Plaintiff's "state almost reached hysteria." AR 254. The ALJ noted that the

6 "claimant's expressed level of pain was so extreme it was implausible given the fact the claimant

7 did not take any strong narcotics for pain and in consideration of her overall treating history thus

8 far." AR 32-22.  The ALJ here again provides a clear and convincing reason, supported by

9 substantial evidence in the record, for rejecting Plaintiff's subjective symptom testimony.

10                    4.  Inconsistent testimony regarding daily activities

11          The ALJ noted that Plaintiff's testimony that she had no social activities, and did not go to

12 church, comb her own hair, or cook conflicted with the testimony of Plaintiff's friend, Rebecca

13 Ortiz.  AR 32-33. Ms. Ortiz wrote in a third-party functional report dated March 22, 2010 that she

14 had known Plaintiff for thirty-five years.  AR 33, 204-211.  Ms. Ortiz stated that she and Plaintiff

15 would "get something to eat" about once a week, and that Plaintiff attended church, combed her

16 own hair, and would sometimes cook dinner. AR 33, 204, 209. Plaintiff's daughter also testified

17 that Plaintiff attended church, but that Plaintiff did not comb her own hair or prepare meals. AR

18 33, 198, 200. The ALJ stated that she gave more weight to the testimony of Ms. Ortiz than to the

19 testimony of Plaintiff's daughter, because Ms. Ortiz's testimony was slightly more consistent with

20 the overall treating records. AR 34.

21          The ALJ properly concluded that the inconsistencies between the Plaintiff's account of her

22 daily activities and Ms. Ortiz's testimony regarding Plaintiff's activities undermined Plaintiff's

23 credibility.  AR 32-34; *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); SSR 97-6p

24 (in assessing a claimant's credibility, the ALJ may consider whether the claimant's statements are

25 consistent with "observations by other persons concerning the individual's daily activities"). The

26 ALJ's reliance on this inconsistency constitutes a clear and convincing reason, supported by

27 substantial evidence in the record, for rejecting Plaintiff's testimony.

28 ///

5. <u>Poor work history</u>

As to her work history, Plaintiff stated that in the fifteen years before she became unable to work, she had worked for approximately two months in 2002 as a security guard and approximately twenty-two months in 2007-2008 as a caretaker for her grandson. AR 178-180.  The ALJ considered Plaintiff's poor work history in making his credibility determination.  Specifically, the ALJ noted that Plaintiff "has a poor work history, which suggests that her current unemployment may not be due to medical impairments." AR 32.  The ALJ properly considered Plaintiff's poor work history as a factor in making his credibility determination. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (the ALJ's finding that the plaintiff had an "extremely poor work history" and "has shown little propensity to work in her lifetime," was a specific, clear and convincing reason for discounting her testimony).

In sum, the ALJ cited specific, clear and convincing reasons, based on permissible grounds and supported by the record as a whole, for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196–97 (9th Cir. 2004); *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002). As such the ALJ's credibility determination is proper.

**CONCLUSION**

The Court finds that the ALJ's decision is free of legal error and is supported by substantial evidence in the record as a whole.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Acting Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, and against Plaintiff Maria M. Ramirez.


IT IS SO ORDERED.

Dated:   **September 30, 2014**                          **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE

15